Slip Op. 13-134

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DOWNHOLE PIPE & EQUIPMENT, LP, and DP-MASTER MANUFACTURING CO., LTD., | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : Before: Nicholas Tsoucalas, |
| v. | :        Senior Judge |
| | : |
| UNITED STATES, | : Court No.: 11-00081 |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| VAM DRILLING USA, TEXAS STEEL CONVERSION, INC., ROTARY DRILLING TOOLS, TMK IPSCO, and U.S. STEEL CORP., | : |
| | : |
| | : |
| | : |
| Defendant-Intervenors. | : |

## OPINION

[The Department of Commerce's remand determination is sustained]

Dated:November 4, 2013

Mark B. Lehnardt, Lehnardt & Lehnardt, LLC, of Liberty, MO, and Irene H. Chen, Chen Law Group LLC, of Rockville, MD, for plaintiffs.

Mikki Cottet, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director. Of counsel on the brief was Nathaniel J. Halvorson, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

Roger B. Schagrin and John W. Bohn, Schagrin Associates, of Washington, DC, for VAM Drilling USA, Texas Steel Conversion, Inc., Rotary Drilling Tools, and TMK IPSCO.

TSOUCALAS, Senior Judge:  This matter is before the court

following remand to the Department of Commerce ("Commerce") in
Downhole Pipe & Equip. LP v. United States, 36 CIT __, 887 F. Supp.
2d 1311 (2012) ("Downhole I").   Commerce issued its remand
redetermination in May 2013.   See Final Results of Redetermination
Pursuant to Court Remand (May 13, 2013), ECF No. 94 ("Remand
Results").   Plaintiffs Downhole Pipe & Equipment, LP, and DP-Master
Manufacturing Co., Ltd. ("DP-Master" and, collectively,
"Plaintiffs"), contest the Remand Results.   For the reasons
discussed below, the court sustains the Remand Results.

## BACKGROUND

The relevant facts and procedural history of this case
are set forth in Downhole I, 36 CIT at __, 887 F. Supp. 2d at
1315–18, and are summarized briefly herein.   Drill pipes are
"specialized high-strength iron alloy tube[s]" used in oil drilling
applications alongside other so-called oil country tubular goods
("OCTG").   Id. at __, 887 F. Supp. 2d at 1315.   In the original
proceeding, Commerce determined that "drill pipe from the [People's
Republic of China ("PRC")] is being, or is likely to be, sold in
the United States at [less than fair value ("LTFV")]".   Drill Pipe
From the PRC: Final Determination of Sales at LTFV and Critical
Circumstances, 76 Fed. Reg. 1966, 1966 (Jan. 11, 2011) ("Final
Determination").

The Final Determination specifically targeted drill pipe
green tubes ("DPGT"), an input for drill pipe defined as "seamless

tubes with an outer diameter of less than or equal to 6 5/8 inches[,] . . . containing between 0.16 and 0.75 percent molybdenum, and containing between 0.75 and 1.45 percent chromium." Id. at 1967.  Commerce determined the surrogate value for DPGT using import data for Indian Harmonized Tariff Schedule ("IHTS") categories 7304.23 and 7304.29.  See Drill Pipe from the PRC: Issues and Decision Memorandum for the Final Determination at 31–32 (Jan. 3, 2011), A-570-965.

        In Downhole I, the Court remanded the Final Determination to Commerce with instructions to reconsider the surrogate values for DPGT and the labor wage rate.[1]  Downhole I, 36 CIT at __, 887 F. Supp. 2d at 1330.  The Court held that Commerce failed to address Infodrive data contradicting its finding that DPGT entered India under IHTS 7304.23 and 7304.29 during the period of investigation.  Id. at __, 887 F. Supp. 2d at 1324–25.  The Court acknowledged that the IHTS subheadings may in fact be the best available information, but it could not affirm the Final Determination on the basis of the explanation Commerce provided. Id. at __, 887 F. Supp. 2d at 1325.

        On remand, Commerce examined a number of potential

_____

        [1] On remand, Commerce selected data from "Chapter 6A: Labor Cost in Manufacturing" in the ILO Yearbook for India as the surrogate value for the labor wage rate.  Remand Results at 18. Plaintiffs do not allege error in their submission to the court. See Pls.' Comments on Remand Redetermination ("Pls.' Cmts.").

surrogate values for DPGT, including: import data for IHTS 7304.23, 7304.29, and 7304.59; price data on P1110 and J/K 55 tubes from Metal Bulletin Research; and adjusted values for alloy steel billets and seamless tubes.  See Draft Results of Redetermination Pursuant to Remand at 4 (Apr. 5, 2013), ECF No. 119-2 ("Draft Results").  Commerce initially selected price data for imports under IHTS 7304.59.10 and 7304.59.20, "circular, seamless, alloy" classifications covering "products which are not properly classified as drill pipe, OCTG, or a number of other clearly-delineated types of tubes."[2]  Id. at 15.  Commerce found that the IHTS 7304.59 data was most representative of DPGT, contemporaneous with the period of investigation, duty and tax exclusive, publicly available, and represented a broad market average.  See id. at 15-16.  Commerce "confirmed" its analysis with a National Import Specialist at United States Customs and Border Protection ("CPB"). Memorandum from Toni Datch, re: Remand Redetermination in the Investigation of Drill Pipe from the PRC at 1 (Mar. 26, 2013), A-570-965 ("NIS Memo").

    For the final results, Commerce selected import data from IHTS 7304.59.20 alone to value DPGT.  See Remand Results at 14-18. Commerce concluded that Infodrive data Plaintiffs placed on the

---

[2] IHTS 7304.59.10 and 7304.59.20 differ only in terms of the size of the tubes they cover: IHTS 7304.59.10 covers tubes with diameters up to 114.3 mm, while IHTS 7304.59.20 covers tubes with diameters between 114.3 mm and 219.1 mm.  Remand Results at 5.

record conclusively demonstrated that DPGT did not enter India under IHTS 7304.59.10, but did not foreclose the possibility that DPGT entered under IHTS 7304.59.20. Id. at 14. Commerce continued to find that import data for IHTS 7304.59.20 best met its preferences for surrogate values. Id.

Plaintiffs filed comments alleging that the Remand Results were unsupported by substantial evidence and otherwise not in accordance with law. See Pls.' Cmts. at 7-23. Plaintiffs ask the court to remand again with guidance on an acceptable range of surrogate values for DPGT. See id. at 23-25.

## JURISDICTION and STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006) and section 516A(a)(2)(B)(i) of the Tariff Act of 1930,[3] as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2006).

The court will uphold Commerce's remand redetermination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "'Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Goldlink Indus. Co. v. United States, 30 CIT 616, 618, 431 F. Supp. 2d 1323, 1326 (2006) (quoting Universal

_____

[3] All further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the United States Code, 2006 edition, and all applicable supplements thereto.

Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)).  Under this standard, "an agency 'must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" Gerber Food (Yunnan) Co. v. United States, 31 CIT 921, 926, 491 F. Supp. 2d 1326, 1333 (2007) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)).  Nevertheless, "the possibility of drawing two inconsistent conclusions from the evidence does not invalidate Commerce's conclusion as long as it remains supported by substantial evidence." Zhaoqing New Zhongya Aluminum Co. v. United States, 36 CIT __, __, 887 F. Supp. 2d 1301, 1305 (2012) (citing Universal Camera, 340 U.S. at 488).

## DISCUSSION

Commerce determines the normal value of subject merchandise produced in a non-market economy ("NME") "on the basis of the value of the factors of production utilized in producing the merchandise" in a comparable market economy.  19 U.S.C. § 1677b(c)(1).  In selecting these surrogate values, Commerce must use the "best available information." Id. Commerce "normally will use publicly available information" from a single country, 19 C.F.R. § 351.408(c)(1), (2) (2013), and it "prefers data that reflects a broad market average, is . . . contemporaneous with the period of review, specific to the input in question, and exclusive of taxes on exports." Fuwei Films (Shandong) Co. v. United States,

36 CIT __, __, 837 F. Supp. 2d 1347, 1350-51 (2012).

        "[T]he process of constructing foreign market value for a producer in a [NME] country is difficult and necessarily imprecise." Nation Ford Chem. Co. v. United States, 166 F.3d 1373, 1377 (Fed. Cir. 1999) (internal quotation marks omitted). Commerce has "broad discretion to determine the best available information," Goldlink, 30 CIT at 619, 431 F. Supp. 2d at 1327 (internal quotation marks omitted), and "[i]f Commerce's determination of what constitutes the best available information is reasonable, then the Court must defer to Commerce." Id., 431 F. Supp. 2d at 1327.

        Plaintiffs argue that Commerce erroneously determined that IHTS 7304.59.20 was the best available information because IHTS 7304.59.20 is not representative of DPGT and Commerce did not provide adequate justification for rejecting non-IHTS alternative values on the record. See Pls.' Cmts. at 8-23.

## I. Commerce Reasonably Concluded that IHTS 7304.59.20 Best Represented DPGT

        Plaintiffs argue that Commerce erred in finding that IHTS 7304.59.20 was representative of DPGT because: (1) Commerce's analysis of Indian tariff classifications was inadequate; (2) Commerce failed to address Infodrive data indicating that IHTS 7304.59.20 was not representative of DPGT or DP-Master's merchandise; (3) Commerce ignored evidence indicating that the average unit value ("AUV") of entries under IHTS 7304.59.20 was

"aberrantly high;" and (4) Commerce improperly relied on the NIS Memo.  <u>See</u> Pls.' Cmts. at 8-21.

## A. Analysis of Indian Tariff Classifications

Plaintiffs argue that "Commerce's legal analysis of tariff classifications was inadequate" because Commerce dismissed alternative IHTS subheadings without considering "legal principles" such as General Rule of Interpretation 2(a).[4]  Pls.' Cmts. at 13. Plaintiffs insist further analysis was necessary given Commerce's change in position from the <u>Final Determination</u> and record evidence indicating that petitioners classified DPGT under subheadings other than 7304.59.  <u>Id.</u> at 13-15.

Plaintiffs fail to demonstrate that Commerce's IHTS analysis was inadequate.  First, Plaintiffs do not cite any legal authority demonstrating that Commerce must conduct a full classification analysis when considering import data from a particular foreign tariff heading as a surrogate value.[5]  Second, Plaintiffs provide virtually no legal analysis contravening

---

[4] GRI 2(a) reads: "Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article."

[5] Plaintiffs also fail to provide guidance on why CBP regulations should apply to the classification of DPGT under IHTS categories over Indian laws and regulations.  The court need not address this matter because Commerce's selection of IHTS 7304.59.20 was reasonable on the basis of the record as a whole.

Commerce's selection. This court has ruled that Commerce should
not rely on a basket tariff category if a more representative
surrogate value is available. See Arch Chems., Inc. v. United
States, 33 CIT 954, 972 (2009) (not reported in the Federal
Supplement) (citing Polyethylene Retail Carrier Bag Comm. v. United
States, 29 CIT 1418, 1444 (2005) (not reported in the Federal
Supplement)). Here, Commerce reasonably concluded that IHTS
7304.59.20 was more representative of DPGT than the alternative
IHTS categories on the record. See Draft Results at 5-6, 15-16;
Remand Results at 14-18. Commerce concluded that IHTS 7304.23 was
not representative of DPGT because it captured processed semi-
finished drill pipe. See Draft Results at 5 (unchanged in Remand
Results). Similarly, Commerce concluded that IHTS 7304.29 was not
representative of DPGT because it captured "semi-finished [OCTG]
casing and tubing," which is not an input for drill pipe. Id.
(unchanged in Remand Results). In contrast, Commerce found that
IHTS 7304.59.20 better represented DPGT because it was a "circular,
seamless, alloy category cover[ing] products which are not properly
classified as drill pipe, OCTG, or a number of other clearly-
delineated types of tubes." Id. at 15 (unchanged in Remand
Results). Commerce "confirmed" its analysis with the professional
opinion of a CPB official. See NIS Memo at 1. Accordingly,
Commerce's classification analysis was reasonable. See Gerber
Food, 31 CIT at 926, 491 F. Supp. 2d at 1333 (quoting Motor Vehicle

<u>Mfrs. Ass'n</u>, 463 U.S. at 43).

### B. Infodrive Data

Plaintiffs also argue that Infodrive data demonstrates that 7304.59.20 is not representative of DPGT generally, or DP-Master's DPGT. <u>See</u> Pls.' Cmts. at 16–18. Plaintiffs cite Infodrive data indicating that there were no entries of DPGT in at least 60% of the entries under IHTS 7304.59.20 during the period of investigation. <u>See</u> <u>id.</u> at 16. In light of this evidence and Infodrive data indicating that DPGT did not enter under IHTS 7304.59.10 at all, Plaintiffs conclude that Commerce erroneously selected IHTS 7304.59.20 data to value DPGT. <u>See</u> <u>id.</u> at 17–18.

Plaintiffs essentially compare Commerce's selection of IHTS 7304.59.20 to the surrogate value for DPGT that the Court remanded in <u>Downhole I</u>. <u>See</u> <u>id.</u> at 17. In that opinion, the Court recognized Infodrive's "utility . . . as a supplement to aggregated IHTS data," but also noted that "Commerce need not rely on Infodrive data that is incomplete or demonstrably inaccurate." <u>Downhole I</u>, 36 CIT at __, 887 F. Supp. 2d at 1323. The Court also acknowledged that "Commerce is obliged to address Infodrive data offered in rebuttal if it specifies a 'definite and substantial percentage' of imports under a particular IHTS category." <u>Id.</u>, 887 F. Supp. 2d at 1323 (quoting <u>Calgon Carbon Corp. v. United States</u>, 35 CIT __, __, Slip Op. 11-21 at 17 (Feb. 17, 2011) (not reported in Federal Supplement)). The Court remanded Commerce's IHTS

classification because Commerce failed to explain contradictory Infodrive data. Id. at __, 887 F. Supp. 2d at 1325. It also noted that IHTS 7304.23 and 7304.29 might be the best available information, but Commerce had to substantially support its selection in light of the Infodrive data. Id., 887 F. Supp. 2d at 1325. See also Calgon, 35 CIT at __, Slip Op. 11-21 at 17–18 (remanding where Commerce failed to substantially support its tariff classification while taking into account incomplete but contradictory Infodrive data).

In contrast to the facts in Downhole I, here Commerce explained why its decision retained substantial record support in light of the Infodrive data. See Remand Results at 16–17. As noted above, Commerce selected IHTS 7304.59.20 based on its own analysis of the IHTS and the professional opinion of a CBP official. See Draft Results at 5–6, 15–16; Remand Results at 14–16. With specific regard to the Infodrive data, Commerce noted that IHTS 7304.59.20 was not limited to DPGT as it is "a basket category covering multiple types of seamless alloy tubes that could not be classified elsewhere." Id. at 16–17. Additionally, given that the other IHTS subheadings did not capture DPGT, and "without information corroborating what the remainder of the overall imports consist[ed] of," Commerce concluded that IHTS 7304.59.20 was still most representative of DPGT. See id. at 17. Because it addressed the Infodrive data in compliance with the requirements articulated

in Downhole I and Calgon, Commerce's analysis was reasonable.  See
Downhole I, 36 CIT at __, 887 F. Supp. 2d at 1325; Calgon, 35 CIT
at __, Slip Op. 11-21 at 17-18.

        Plaintiffs also argue that the Infodrive data established
that IHTS 7304.59.20 was not representative of DP-Master's DPGT.
Pls.' Br. at 17.  According to Plaintiffs, 70% of DP-Master's DPGT
was of the diameter covered by IHTS 7304.59.10.  Id.  As Infodrive
data indicated that DPGT did not enter India under IHTS 7304.59.10,
and IHTS 7304.59.20 does not correspond to 70% of DP-Master's
merchandise, Plaintiffs insist that the surrogate value should not
apply to that merchandise.  See Pls.' Br. at 17-18.

        This  argument  is  unconvincing.   As  noted  above,
determining  a  surrogate  value  is  "difficult  and  necessarily
imprecise."  Nation Ford Chem. Co., 166 F.3d at 1377.  Although
IHTS  7304.59.20  does  not  perfectly  cover  DP-Master's  DPGT,
Commerce's  decision  was  reasonable  nonetheless  given  the  record
support  for  IHTS  7304.59.20  and  the  relative  weakness  of  the
alternative values.  See QVD Food Co. v. United States, 34 CIT __,
__, 721 F. Supp. 2d 1311, 1318 (2010) (when considering "imperfect
alternatives"  for  a  surrogate  value,  Commerce's  selection  is
reasonable if supported with substantial evidence in the record),
aff'd 658 F.3d 1318 (Fed. Cir. 2011).

### C. AUV of Entries Under IHTS 7304.59.20

        Third, Plaintiffs argue that Commerce failed to address

its claim that the $4,978.08/MT AUV of IHTS 7304.59.20 entries was "aberrantly high." See Pls.' Cmts. at 18. According to Plaintiffs, record evidence demonstrated that DPGT comprises approximately 30% of the value of finished drill pipe. Id. at 20. Because the AUV for IHTS 7304.59.20 entries is nearly double the $2,511.67/MT AUV for entries of finished and semi-finished drill pipe under IHTS 7304.23, Plaintiffs insist that "no reasonable mind could accept this value." Id. at 18.

"'[W]hen confronted with a colorable claim that the data that Commerce is considering is aberrational, Commerce must examine the data and provide a reasoned explanation as to why the data it chooses is reliable and non-distortive.'" See Xinjiamei Furniture (Zhangzhou) Co. v. United States, 37 CIT __, __, Slip Op. 13-30 at 10 (Mar. 11, 2013) (quoting Mittal Steel Galati S.A. v. United States, 31 CIT 1121, 1135, 502 F. Supp. 2d 1295, 1308 (2007)). "In such a case, it is not enough for Commerce to 'summarily discard the alternatives as flawed,' Commerce must also 'evaluate the reliability of its own choice.'" Id., Slip Op 13-30 at 10 (quoting Shanghai Foreign Trade Enters. Co. v. United States, 28 CIT 480, 495, 318 F. Supp. 2d 1339, 1352 (2004)).

Commerce clearly addressed this argument in the Remand Results, finding that Plaintiffs' "previous arguments indicate that [IHTS 7304.23] is much broader than finished drill pipe, and is not a reliable indicator of the value of finished drill pipe." Remand

<u>Results</u> at 14. Specifically, Commerce noted that Plaintiffs "previously explained that some line items under [IHTS] category 7304.23.90 may be of drill pipe tools, other drill pipe products, or inputs of either." <u>Id.</u> at 14–15 (internal quotation marks omitted). Additionally, the Court acknowledged in <u>Downhole I</u> that IHTS 7304.23.90 contains entries of "seamless pipe" and other products. <u>See Downhole I</u>, 33 CIT at __, 887 F. Supp. 2d at 1324 & n.11. Simply put, there was no verifiable "benchmark" for drill pipe from which Commerce could value DPGT. And, as noted above, Commerce provided a reasonable explanation for its selection of IHTS 7304.59.20. Accordingly, Commerce reasonably rejected Plaintiffs' argument. <u>See Gerber Food</u>, 31 CIT at 926, 491 F. Supp. 2d at 1333 (quoting <u>Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 43).

### D. The NIS Memo

Plaintiffs argue that Commerce's determination was unreasonable because the NIS Memo was the "sole factual justification." Pls.' Cmts. at 8. The NIS Memo reads: "During the week of January 7, 2013, [Commerce] contacted Mary Ellen Laker, [CBP] National Import Specialist, regarding the HTS classification of [DPGT], as described in the scope of the <u>Order</u>. She confirmed that [DPGT] would be categorized under HTS 7304.59."[6] NIS Memo at

---

[6] The "<u>Order</u>" Commerce referred to is <u>Drill Pipe From the PRC: Antidumping Duty Order</u>, 76 Fed. Reg. 11,757 (Mar. 3, 2011), which is based, in part, on the <u>Final Determination</u>.

1 (internal footnote omitted). Plaintiffs allege that the NIS Memo is unreliable as evidence because it does not explain whether the contact with the CPB official was casual or formal, whether Commerce provided the scope language to the CBP official, whether the CBP official knew the Indian tariff categories as well as the U.S. categories, whether the CBP official considered alternative IHTS categories, or whether the CBP official considered the scope language. See Pls.' Cmts. at 9–12. Accordingly, Plaintiffs argue that the NIS Memo "fails to provide even the proverbial scintilla" of evidence. Id. at 13 (internal quotation marks omitted).

Plaintiffs' argument is unconvincing. First, contrary to Plaintiffs' insistence, Commerce did not rely solely on the NIS Memo in its analysis. As noted above, Commerce fell back on IHTS 7304.59.20 after reasonably concluding that it was more representative of DPGT than the other IHTS classifications on the record. See Draft Results at 5–6, 15–16; Remand Results at 14–18. With specific regard to the NIS Memo, Commerce explained that it "confirmed" this analysis with the CPB official. See NIS Memo at 1; Remand Results at 15–16.

Second, Plaintiffs' argument is entirely conjectural. Plaintiffs insist that the NIS Memo contains several possible flaws, but fail to identify any evidence in the record supporting their assertions. See Pls.' Cmts. at 9–12. Accordingly, their argument simply invites the court to reweigh evidence. However,

"[t]he court's role is not to reweigh evidence," <u>Fedmet Res. Corp.
v. United States</u>, 37 CIT __, __, 911 F. Supp. 2d 1348, 1355 (2013)
(Tsoucalas, J.) (citing <u>Laminated Woven Sacks Comm. v. United
States</u>, 34 CIT __, __, 716 F. Supp. 2d 1316, 1328 (2010)
(Tsoucalas, J)), and it declines to do so here.

## II. Commerce Reasonably Rejected the Alternative Surrogate Values on the Record

Finally, Plaintiffs argue that Commerce "wrongly
dismissed" the other alternative surrogate values on the record.
Pls.' Cmts. at 21. Incorporating by reference their pre-draft
remand comments, Plaintiffs insist that the price data for P1110
and J/K 55, as well as the adjusted values for alloyed steel
billets and seamless tubes, are all superior to the data Commerce
selected. <u>Id.</u> at 21–23. Plaintiffs add that, contrary to
Commerce's findings, the data from these sources would require
little if any adjustment to calculate a surrogate value for DPGT.
<u>See</u> <u>id.</u> at 23.

As noted above, when selecting a surrogate value,
Commerce "normally will use publicly available information" from a
single country, <u>see</u> 19 C.F.R. § 351.408(c)(1), (2), and it "prefers
data that reflects a broad market average, is . . . contemporaneous
with the period of review, specific to the input in question, and
exclusive of taxes on exports." <u>Fuwei Films</u>, 36 CIT at __, 837 F.
Supp. 2d at 1350–51. Here, Commerce reasonably determined that

IHTS 7304.59.20 import data satisfied more of its selection criteria than the flawed alternatives on the record.

Commerce rejected <u>Metal Bulletin Research</u> price data for J/K 55 because J/K 55 is not an input for drill pipe and was "at best comparable" to DPGT. <u>Draft Results</u> at 8 (unchanged in <u>Remand Results</u>). Moreover, the J/K 55 data did not reflect actual sales prices, was not contemporaneous with the period of investigation, and covered only one month of prices. <u>Id.</u> (unchanged in <u>Remand Results</u>). Therefore, Commerce reasonably concluded that J/K 55 data did not satisfy its selection criteria. <u>See Fuwei Films</u>, 36 CIT at __, 837 F. Supp. 2d at 1350-51.

Commerce rejected the P1110 price data for similar reasons, finding that P1110 is not representative of DPGT because it is a "finished OCTG product" that cannot be used as an input for drill pipe. <u>Draft Results</u> at 9 (unchanged in <u>Remand Results</u>). Additionally, the P1110 data was based on offers and only covered one month of price information. <u>Id.</u> at 9 (unchanged in <u>Remand Results</u>). Accordingly, Commerce reasonably determined that the P1110 data was not the best available information. <u>See Fuwei Films</u>, 36 CIT at __, 837 F. Supp. 2d at 1350-51.

Commerce also rejected adjusted values for alloy steel billets and seamless tubes, finding that the record lacked sufficient information to adjust the values for the required alloying costs and that calculating such adjustments required

proprietary information.  See Draft Results at 9-12 (unchanged in Remand Results).  Plaintiffs contest this finding, arguing that the cost of alloying elements for steel billets and seamless tubes is minimal and therefore the values for these products are the most accurate on the record.  See Pls.' Cmts. at 22-23.  Plaintiffs fail to address Commerce's finding that these adjustments, however small, require proprietary information.  See Remand Results at 17. Because its regulations direct it to use "publicly available information," 19 C.F.R. § 351.408(c)(1), Commerce reasonably rejected these adjusted values.

In contrast, Commerce found that the IHTS 7304.59.20 data is "contemporaneous with the [period of investigation], represent[s] a broad market average, [is] tax and duty exclusive, and [is] publicly available, thus comporting with [its] selection criteria." Draft Results at 16; see also Remand Results at 14.  And, as noted above, Commerce determined that IHTS 7304.59.20 was the surrogate value most representative of DPGT.  See Draft Results at 5-6, 15-16; Remand Results at 14-18.  Accordingly, Commerce reasonably concluded that IHTS 7304.59.20 was the best available information on the record.  See 19 C.F.R. § 351.408(c)(1), (2); Fuwei Films, 36 CIT at __, 837 F. Supp. 2d at 1350-51.

## CONCLUSION

For the foregoing reasons, Commerce's remand redetermination is sustained in its entirety.  Judgment will be entered accordingly.


                                         /s/ Nicholas Tsoucalas
                                        **Nicholas Tsoucalas**
                                          **Senior Judge**

**Dated:** **November 4, 2013**
       **New York, NY**